UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RALPH H. DAVIS

                              Plaintiff,

       -against-                                          7:06-CV-00657 (LEK)

MICHAEL J. ASTRUE,
*Commissioner of Social Security*

                              Defendant.

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

In May of 2004, Plaintiff Ralph H. Davis ("Plaintiff") filed an application for disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since March 25, 2004. His application was denied by the Commissioner for lack of disability.

Plaintiff, through his attorneys, commenced this action on May 30, 2006. Compl. (Dkt. No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Both parties have moved for judgment on the pleadings. For the reasons that follow, this case is remanded for further proceeding.

**II.    BACKGROUND**

The relevant procedural history may be summarized as follows: Plaintiff Ralph H. Davis filed an application for DIB on May 4, 2004, alleging disability beginning March 25, 2004. R. at

66.¹  This application was denied initially and upon reconsideration.  R. at 35.  Plaintiff filed a timely Request for Hearing by an Administrative Law Judge ("ALJ").  R. at 40.  On September 21, 2005, Plaintiff appeared with his attorney and testified before ALJ Robert E. Gale.  R. at 223-48.  On January 26, 2006, ALJ Gale issued a written decision denying Plaintiff's application for benefits.  R. at 11-21.  The ALJ's decision became the Commissioner's final decision on April 5, 2006, when the Appeals Council denied Plaintiff's request for review.  R. at 5-7.

Plaintiff, through counsel, commenced this action on May 30, 2006.  Compl. (Dkt. No. 1).  The Commissioner interposed an Answer on September 15, 2006.  Answer (Dkt. No. 5).  Plaintiff filed a supporting Brief on September 27, 2006.  Pl.'s Br. in Supp. (Dkt. No. 6).  The Commissioner filed a Brief in Opposition on October 19, 2006.  Def.'s Br. in Opp'n (Dkt. No. 9).  Based on these submissions, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

### III. DISCUSSION

#### A. Legal Standard

District courts have jurisdiction to review claims contesting a final decision by the Commission of Social Security denying disability benefits.  42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).  In reviewing any such claim, a district court may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, it must defer to the Commissioner's determination unless the correct legal standards were not applied or substantial evidence does not support that determination.  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("[w]here there is a reasonable basis for doubt

---

¹Citations to "R." refer to the Administrative Record.  Dkt. No. 4.

whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles").

"Substantial evidence" requires more than a mere scintilla of evidence, yet less than a preponderance. Sanchez v. NLRB, 785 F.2d 409 (2d Cir. 1986). It has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). Where evidence is susceptible to more than one rational interpretation, a district court may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Barnett v. Apfel, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998).

A district court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand. 42 U.S.C. § 405(g). Granting judgment on the pleadings is appropriate where the material facts are undisputed and where a court may make a judgment on the merits with reference only to the contents of the pleadings. Fed. R. Civ. P. 12(c); Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). Remand is warranted where there are gaps in the

record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard. See Butts, 388 F.3d at 385; Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Remand is most appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted). Additionally, remand is appropriate to allow for the consideration of additional new evidence which is material to the case and where good cause exists for the failure to submit that evidence in prior proceedings. Melkonyan v. Sullivan, 501 U.S. 89 (1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983). By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose. Rosa, 168 F.3d at 83; Parker, 626 F.2d at 235; Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983).

### B. Five-step Sequential Evaluation

Under the Social Security Act, an individual is disabled if he or she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). The Social Security Administration ("SSA") has established a five-step sequential evaluation process to determine whether a claimant over the age of 18 is disabled under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520; see also Bowen v. Yuckert, 482 U.S. 137 (1987) (upholding the validity of this evaluation process). The plaintiff bears the burden of proof for the first four steps, and the Commissioner bears that burden in step five. See Bowen, 482 U.S. at 146; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

20 C.F.R. § 404.1520 details the SSA's five-step analysis: in step one, the ALJ considers whether the claimant is currently engaged in substantial gainful activity.[2] If the claimant is not engaged in such activity, the ALJ advances to step two of the analysis and considers whether the claimant has a severe impairment meeting the "durational requirement"[3] and significantly limiting his physical or mental ability to perform basic work activities. In making this determination, the ALJ does not consider the claimant's age, education, or work experience. Assuming the ALJ finds the claimant has a severe impairment(s), the ALJ continues to step three and determines whether the impairment(s) meets or equals any of those listed in Appendix 1, Subpart P of Regulation No. 4 ("the Listings"). If the ALJ concludes that the claimant's impairment(s) does meet or equal one or more of the Listings, the claimant shall be deemed disabled. If the claimant's impairment(s) does not meet or equal one of the Listings, the fourth step of the evaluation requires the ALJ to assess whether, despite the claimant's severe impairment, the claimant's residual functional capacity ("RFC")[4] allows him to perform his past work. If the answer to that inquiry is that the claimant is unable to perform his past work, the fifth step asks the ALJ to determine, in light of the claimant's RFC and other vocational factors including the claimant's age, education, and work experience, whether the claimant could perform other work that exists in significant numbers in the national

---

[2] 20 C.F.R. § 404.1572(a) defines "substantial work activity" as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(b) defines "gainful work activity" as "the kind of work usually done for pay or profit."

[3] The impairment must either be expected to result in death or must last for, or be expected to last for, a continuous period of at least 12 months. 20 C.F.R. § 404.1509.

[4] RFC is defined as the most a claimant can do after considering the effects of all his or her medically determinable physical and mental limitations, including those not deemed "severe." See 20 C.F.R. 404.1545; SSR 96-8p.

5

economy.  20 C.F.R. § 404.1520; 20 C.F.R. § 404.1560; Heckler v. Campbell, 461 U.S. 458, 460 (1983).

### B. Analysis

#### 1. Commissioner's Decision

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on January 26, 2006.  R. at 15.  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 25, 2004.  R. at 15.  The ALJ found that Plaintiff had degenerative disc disease and borderline intellectual functioning, which the ALJ concluded were severe impairments.  R. at 17.  The ALJ determined that Plaintiff did not have an impairment(s) that meet or medically equals an impairment in the Listings.  R. at 17.  The ALJ found that Plaintiff was unable to perform any past relevant work.  R. at 20.  Further, the ALJ concluded that given Plaintiff's age (33 years), education (limited with some vocational training), and residual functional capacity (light work), there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  R. at 20.  Accordingly, the ALJ found that Plaintiff was not disabled as that term is defined under the Social Security Act.  R. at 20.

#### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed, and offers three principal arguments in support.  First, Plaintiff asserts that the ALJ erroneously found that Plaintiff's impairments did not meet the criteria of Listing 12.05(C).  Second, Plaintiff argues that the ALJ neglected to follow the "special technique" under 20 C.F.R. § 404.1520a in determining the severity of Plaintiff's mental impairments.  Third, Plaintiff contends that the Commissioner erred in determining that there are significant work opportunities that Plaintiff could perform in light of his

listing-level impairment and nonexertional limitations.  Each argument will be addressed in turn.

### a.     Listing-level impairment

At step three of the sequential analysis, the ALJ must determine whether Plaintiff presents an impairment or combination of impairments that meets or equals one of the Listings.  If a claimant presents impairments medically equal to those listed in Appendix 1, "he or she is conclusively presumed to be disabled and entitled to benefits."  Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995).

The ALJ neglects to discuss his rationale for determining that Plaintiff's intellectual deficiencies do not meet a listing-level impairment. R. at 17.  The record is unclear as to whether the ALJ even considered Listing 12.05(C) in assessing Plaintiff's disability, though portions of his decision suggest that the ALJ evaluated Plaintiff in light of 12.05(D). R. at 17.  Although the ALJ is not required to record all aspects of his analysis, a reviewing court must be able to determine whether the ALJ's decision is supported by substantial evidence.  See Berry, 675 F.2d at 469; see also Ferraris, 728 F.2d at 587 (finding that the ALJ must set forth "the crucial factors in any determination . . . with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence").  It is impossible to determine whether the ALJ's decision is supported by substantial evidence because he did not document the listing criteria used and evidence on the record indicates that Plaintiff may meet listing-level criteria.

Plaintiff contends that his impairments meet the listing criteria of 12.05(C), which require that he first meet the diagnostic description in the introductory paragraph of 12.05:

> Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of

>the impairment before age 22.

Additionally, Plaintiff must satisfy the requirements of subsection (C):

>C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . .

20 C.F.R. Pt. 404 Subpt. P, App. 1, 12.05(C).

### i. Evidence on the record indicates Plaintiff satisfies the introductory paragraph of 12.05 impairments

The introductory paragraph of Listing 12.05 does not require a formal diagnosis of mental retardation prior to age 22. See Ali v. Astrue, No. 09-CV-2123, 2010 U.S. Dist. LEXIS 21431, at *14 (E.D.N.Y. Mar. 8, 2010) (citing Revised Med. Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50753 (Aug. 21, 2000) (the Commissioner does "not necessarily require evidence from the developmental period to establish that the impairment began before the end of the developmental period . . . the final rules permit [the Commissioner] to use judgment, based on current evidence, to infer when the impairment began")). Plaintiff may demonstrate his mental impairments started before age 22 by furnishing evidence that he attended special education classes, failed to complete highschool, or had difficulties in reading, writing, or math. See Ali, 2010 U.S. Dist Lexis, at *14 (citing Christner v. Astrue, 498 F.3d 790, 793 (8th Cir. 2007) (inferring mental retardation before 22 because claimant dropped out of school at ninth-grade after struggling in special education classes); Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006) (inferring mental retardation because claimant dropped out of school in ninth grade, struggled in special education classes, and had trouble with reading, writing, and math); Devoe v. Barnhart, No. 3:05CV746, 2006 U.S. Dist. LEXIS 27057, at *18-19 (D. Conn. Mar. 15, 2006) (finding that early

IQ scores indicating claimant functioned within the "borderline to low average range of intelligence" and claimant dropping out of school at a young age showed he was mentally retarded before 22); Vasquez-Ortiz v. Apfel, 48 F. Supp. 2d 250, 257 (W.D.N.Y. 1999) (inferring mental retardation from IQ score taken after claimant was 22); Prentice v. Apfel, No. 96-CV-851, 1998 U.S. Dist. LEXIS 5050, at *4 (W.D.N.Y. Apr. 8, 1998) (inferring mental retardation from claimant dropping out of school after tenth grade)).

      Similar to the aforementioned cases, Plaintiff has an extensive history showing trouble with school, forcing him to enroll in special education classes and drop out of high school before graduation.  Plaintiff began having trouble in school at age 8 when, after repeating the first grade and kindergarten, he continued to function below his grade level for reading performance and comprehension.  R. at 120.  Plaintiff took various intelligence tests at the time, which indicated borderline intellectual functioning and difficulty remembering and following directions.  R. at 121.  Throughout school, Plaintiff was enrolled in special education classes with resource room assistance.  R. at 122-32.  Plaintiff took additional intelligence tests at age 14, receiving a verbal score of 79, a performance score of 82, and a full scale score of 79, indicating that he had borderline intellectual functioning.  R. at 134.  Plaintiff dropped out of school at age 16 after completing the ninth grade and some BOCES autobody training.  R. at 132, 228.

      Plaintiff furnishes an extensive amount of evidence that could support a determination that he had a mental impairment beginning before age 22.  On remand, the ALJ needs to clarify whether he considered this evidence in light of Listing 12.05, whether he found it sufficient, and, if not, why.  Only then will a reviewing Court be able to determine if his conclusion is supported by substantial evidence.

9

     **ii.  The ALJ's failure to address Plaintiff's IQ tests within the 12.05(C) range requires remand**

  Intelligence test results may help verify the presence of mental retardation or the extent of cognitive functioning.  20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.00(D)(6).  Intelligence tests that are wide in scope and test both verbal and performance abilities are preferable.  20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.00(D)(6)(d).

  Plaintiff has presented two sets of IQ results, one from the test he took in 1986 at age 14, R at 134, and another set from a test administered by Dr. Williams on June 15, 2004 pursuant to Plaintiff's disability application.  R. at 176-78.  On the latter test, Plaintiff received a verbal score of 73, a performance score of 70, and a full scale score of 69.  R. at 177.  The ALJ described the second test as being a "thorough" examination and afforded it considerable weight in his decision.  R. at 19.  Although the ALJ discussed Dr. Williams' examination, this evidence was not included in the ALJ's analysis of whether Plaintiff had a listing-level impairment.  R. at 17, 19.  The ALJ's treatment of this IQ test is problematic because: (1) it is unclear how he reconciled Plaintiff's two sets of IQ scores and; (2) why the later examination is not indicative of a listing-level mental impairment under § 12.05(C).

  Regulations provide that the SSA considers the lowest IQ score derived from a single test.  See  20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.00(D)(6)(c).  Although there is no definite rule on the issue of how to reconcile multiple IQ results, courts tend to prefer the lowest IQ score across multiple, valid tests.  See Coogan v. Astrue, No. 08-1387, 2009 U.S. Dist. LEXIS 15678, at *6 n.2 (D. N. J. Feb. 27, 2009) (stating that it is not the ALJ's task to decide which IQ score he prefers as Listing 12.05(C) requires only one valid score in the applicable range); Ray v. Chater, 934 F. Supp.

347, 350 (N.D. Cal. 1996) (opining that the regulations prefer the lowest score amongst multiple tests).

Therefore, there is substantial evidence in the record to support the determination that Plaintiff had an IQ between 60 and 70. It is therefore unclear if the ALJ, in fact, evaluated Plaintiff under § 12.05(C), why he reached his conclusion, or whether he considered the significance of Plaintiff's lowest IQ scores. Although the ALJ had the ability to find Plaintiff's later IQ scores invalid because they were inconsistent with evidence in the record, if that is indeed what he found, he should explain the basis for his decision. See Miller v. Astrue, No. 07-CV-1093, 2009 U.S. Dist. LEXIS 75308, at *19 (N.D.N.Y. July 29, 2009); Vasquez-Ortiz, 48 F. Supp. 2d at 256-57 (finding IQ scores were not inconsistent with evidence showing claimant had difficulties reading and writing); Reid v. Astrue, No. 1:07-CV-577, 2010 U.S. Dist. LEXIS 62689, at *34 (N.D.N.Y. June 23, 2010) (Kahn, J.) (lower IQ score inconsistent with other tests and was noted by its administrator to possibly underestimate claimant's true IQ); Markle v. Barnhart, 324 F.3d 182, 189 (3rd Cir. 2003) (finding an IQ score of 68 was not inconsistent with having a driver's license and working as a truck driver); Mackey v. Shalala, 47 F.3d 951, 953 (8th Cir. 1995) (finding the ALJ could reject low IQ scores that were inconsistent with claimant's work history and prior education). Furthermore, in a separate section of his decision, the ALJ gave the lower scores and examination considerable weight, indicating that he did not find the IQ results invalid. R. at 19. Finally, the regulations would suggest that the earlier IQ test should be given less weight than the later one because it was administered several years ago and prior to Plaintiff turning 16. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00(D)(10) ("IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40

or above").

The ALJ did not provide any explanation regarding the different IQ scores and how they were reconciled with evidence in the record. Instead, although the ALJ gave the latter test considerable weight, he failed to explain its relevance in his ultimate evaluation of Plaintiff's listing-level impairments.

### iii. Degenerative disc disease as an additional physical impairment

The SSA has defined the additional physical impairment required under Listing 12.05(C) as an "impairment [that] is a 'severe' impairment, as defined in §§ 404.1520(c) and 416.920(c)." Revised Med. Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50772 (Aug. 21, 2000).

The ALJ stated that Plaintiff's degenerative disc disease is "severe" within the meaning of 20 C.F.R. § 404.1520(c). R. at 17. Furthermore, Plaintiff has undergone two MRIs showing degenerative disc disease at multiple levels. R. at 147, 219. He has been treated with Vicodin, Ultracet, Skelaxin, Ibuprofen, and Toradol for the back pain that results from his condition. R. at 179, 209, 210. Additionally, the ALJ determined that Plaintiff's degenerative disc disease precluded him from performing past relevant work. R. at 20. Therefore, finding that Plaintiff does not have an additional physical impairment that could satisfy § 12.05(C) is not supported by substantial evidence.

In sum, the record is unclear as to whether the ALJ considered § 12.05(C) in evaluating Plaintiff's impairments. Substantial evidence in the record suggests Plaintiff may meet or equal that Listing. Without any express analysis by the ALJ, this Court is unable to determine whether the

ALJ's conclusion, that Plaintiff's impairments do not meet or equal listing-level criteria, includes Listing 12.05(C), and if so, whether that is supported by substantial evidence. Accordingly, remand is appropriate for further clarification.

### b. Mental impairment severity under 20 C.F.R. § 404.1520a

Plaintiff claims that the ALJ did not engage in the appropriate analysis under 20 C.F.R. § 404.1520a to determine the severity of Plaintiff's mental impairment. Pl.'s Br. in Supp. at 17. Plaintiff argues that the ALJ should have performed his analysis according to the "special technique" provided for in the regulations. Id. at 17. The "special technique" described in § 404.1520a is a supplement to the first three steps in the five-step sequential analysis under § 404.1520, and assists in assessing the severity of mental impairments.

This technique requires the SSA to evaluate signs, symptoms, and laboratory findings to assess Plaintiff's degree of functional limitation within four broad categories: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). It is imperative that the ALJ record Plaintiff's degree of functional limitation within these categories and that his findings are supported by evidence, such as a Psychiatric Review Technique Form ("PRTF"). See § 404.1520(e)(2); Kohler v. Astrue, 546 F.3d 260, 266 (2d Cir. 2008).

Plaintiff argues that the ALJ erred in applying this technique because he: (1) did not properly consider the examination results and Dr. Williams' findings from the intelligence tests administered on June 15, 2004; (2) committed a procedural error by failing to record his comparison of Plaintiff's functional limitations to the Listings; and (3) made inaccurate findings with regard to Plaintiff's

13

degree of functional limitation. Pl.'s Br. in Supp. at 12-18. Plaintiff contends that the ALJ's failure to follow this special technique prevented him from making a proper RFC assessment. Id.

    i.  **The ALJ should address the findings made by Dr. Williams' more thoroughly on remand**

As discussed previously, the ALJ's treatment of Dr. Williams' evaluation and Plaintiff's IQ results is problematic. The ALJ fails to explain why this examination is not indicative of a serious, listing-level mental impairment, especially given Dr. Williams' diagnosis that Plaintiff has mild mental retardation to borderline intellectual functioning. R. at 177. The ALJ must reevaluate Plaintiff's IQ scores and explain whether they indicate Plaintiff has a listing-level mental impairment.

    ii.  **The ALJ recorded his findings of Plaintiff's functional limitations properly under 20 C.F.R. § 404.1520a**

Plaintiff argues that 20 C.F.R. § 404.1520a requires the ALJ to document the degree of functional limitation compared to listing criteria. Pl.'s Br. in Supp. at 17. Plaintiff is mistaken regarding what is required under the statute. § 404.1520a(e) only requires the ALJ to record the degree of functional limitation Plaintiff has with respect to the four different categories. See 20 C.F.R. § 404.1520a(e); Kohler, 546 F.3d at 266.

Here, the ALJ documented his findings with respect to each functional category and indicated where the PRTF could be found in the record. R. at 16-17. Therefore, the ALJ has followed the procedure required under § 1520(e). The ALJ is not required under 20 C.F.R § 1520a to document the ratings compared to listing criteria.

    iii.  **The ALJ's findings of Plaintiff's degree of functional limitation should be reconsidered on remand**

Plaintiff argues that his functional limitation in the category of concentration, persistence, or pace should be rated higher than "mild" based on Plaintiff's listing-level impairment. Pl.'s Br. in Supp. at 17.

Dr. Weiss, a State agency physician, completed a PRTF evaluating Plaintiff's degree of functional limitation within each category. R. at 199. Dr. Weiss found that Plaintiff was seldom deficient in maintaining concentration, persistence, or pace. R. at 199. Dr. Weiss did not include individualized comments in the PRTF explaining his assessment. Dr. Weiss stated in the Mental Residual Functional Capacity Assessment that Plaintiff's daily activities demonstrate that he is "clearly not mentally retarded." R at 205.

The ALJ may rely upon the opinions of State agency medical consultants, as these consultants are deemed qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), 416.927(f)(2). When the consultant's opinions are supported by other facts in the record, they provide substantial evidence for the ALJ's findings. See 20 C.F.R. § 416.927(f); Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing Schisler v. Sullivan, 3 F.3d 563, 567-68 (2d Cir. 1993) (holding that regulations are reasonable and not arbitrary or capricious even though they "permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record")). Nevertheless, the ALJ must discuss the weight given to the opinions of any State agency consultant. See 20 C.F.R. § 404.1527(f)(2)(ii). Failure to do so normally requires remand unless the omission results in harmless error. Compare Schisler, 3 F.3d at 567 (finding the ALJ is required to explain weight given to treating doctor's opinions) with Osborne v. Astrue, No. 6:07-CV-0314, 2010 U.S. Dist. LEXIS 68415, at *17 (N.D.N.Y. July, 9 2010) (Kahn, J.) (finding harmless error

when consultative psychologists' opinions were consistent with treating physician).

While it is not evident that the ALJ's oversight caused Plaintiff harm, because the Court has found that remand is necessary to address the ALJ's errors with regard to Plaintiff's potential listing-level impairments, the ALJ should revisit his findings on Plaintiff's degree of functional limitation. Specifically, the ALJ should detail what evidence supported his determination as to Plaintiff's degree of functional limitation and what weight was given to the State consultant's conclusions.

### iv. RFC determination

The fourth step in the sequential analysis requires the ALJ to determine Plaintiff's residual functional capacity. Plaintiff contends that the ALJ was unable to proceed to this step because he committed error prior to the RFC determination.

The ALJ determined that Plaintiff had the RFC to perform the full range of light work, R at 21, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," 20 C.F.R. § 416.967. The ALJ's RFC determination was necessarily affected by his findings at step three with regard to whether Plaintiff's impairments met the listing-level criteria. For the reasons stated previously, reconsideration of the RFC will be necessary on remand.

### c. The ALJ erred in applying the Medical-Vocational Guidelines to Plaintiff

The fifth step in the sequential analysis is a two-part process which requires the ALJ to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could

perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460 (1983). The ALJ satisfies the second part of the process by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

Plaintiff argues that the ALJ erred because: (1) Plaintiff suffered from a listing-level impairment, requiring an individualized assessment of vocational limitations; (2) the ALJ failed to analyze Plaintiff's nonexertional impairments and their effect on Plaintiff's vocational profile; and (3) the ALJ was required to hear testimony from a vocational expert (VE) to determine the degree to which Plaintiff's ability to perform other work is diminished by his nonexertional impairments.

Plaintiff's first argument is based on his prior contention of having a listing-level impairment. Having found that the ALJ committed errors with regard to this finding prior to consultation of the Grids, the use of the Grids must be reevaluated on remand.

Plaintiff's second contention also requires remand in order for the ALJ to determine whether Plaintiff's nonexertional limitations significantly diminish his ability to perform a full range of light work. Plaintiff presents many nonexertional limitations under 20 C.F.R § 404.1569a(c)(ii-vi), including difficulty maintaining attention or concentration, difficulty remembering detailed instructions, and difficulty performing some postural functions such as stooping, reaching, or crawling. R. at 177, 185, 199. The ALJ's decision documents Plaintiff's limited ability to bend and stoop and his limited ability to understand, remember, and carry out detailed instructions. R. at 17. However, these limitations were ignored when the ALJ evaluated Plaintiff's vocational profile. R. at 20.

In certain situations, the combination of exertional and nonexertional impairments may

17

necessarily preclude the application of the Grids.  20 C.F.R § 404.1569a(d).  The ALJ is required to determine whether Plaintiff's nonexertional limitations significantly limit the range of work permitted by his exertional impairments.  Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986) (finding that "application of the grid guidelines and the necessity for expert testimony must be determined on a case-by-case basis").  This determination is inappropriate to make in the context of ultimately deciding whether Plaintiff is disabled.  Id.  Instead, the ALJ must make this determination in order to decide whether it is necessary to hear from a vocational expert regarding the existence of jobs in the national economy for an individual with Plaintiff's limitations.  See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996).

After documenting Plaintiff's nonexertional limitations, the ALJ failed to consider whether they limited Plaintiff's range of work.  If, on remand, the ALJ determines that Plaintiff does not have a listing-level impairment and has the RFC to perform work, the ALJ must consider whether a vocational expert's testimony is needed to determine the range of work that Plaintiff can perform.

### III.   CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that this case is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Decision and Order; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:   July 21, 2010
         Albany, New York

Lawrence E. Kahn
U.S. District Judge